# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD DEMERSON | 1:06-cv-00250-LJO-WMW (PC) |
| Plaintiff, | |
| v. | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| WARDEN OF SATF, et. al., | (Doc. 42) |
| Defendants. | |

**I.     SCREENING ORDER**

Edward Demerson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis. Plaintiff filed his Complaint on March 6, 2006. (Doc. 1.) Subsequent to both motions for leave to file amend the Complaint (granted prior to screening) and extensions of time to file, on February 8, 2008, Plaintiff filed the First Amended Complaint. (Doc. 42.)

**A.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been

paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

### B. Summary of Plaintiff's First Amended Complaint

At the time of the issues complained of in his complaint, Plaintiff was a state prisoner at Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California. In his First Amended Complaint, Plaintiff now names nineteen defendants and seeks monetary damages.

Unfortunately, Plaintiff attempts to pursue a number of unrelated claims in his First Amended Complaint – to wit: (1) a March 18, 2005 incident of provoking a fight amongst inmates and subsequent acts alleged against Defendants Correctional Officers Reyna, Reynoso, and Morgan, Sergeants Curtiss and Padilla, Captain Wan, Lieutenants Odle, Pineda, and Gallagher, MTA Hernandez, Warden Hense, Director Woodford, and Appeals Coordinator N. Grannis (Doc. 42, pp. 9-17); (2) a May 31, 2005 incident of being placed in a stripped cell alleged against Sergeants Davis and Smith, Lieutenants Alva and Beelers, Captain Diaz, and Warden Adams (Id. pp. 18-21); (3) an October 19, 2005 incident of being placed in a stripped cell alleged against Sergeant Munoz (Id. pg. 21); (4) an issue where his terminally ill father was

turned away from visiting Plaintiff without specifying which Defendants were responsible (Id. pp. 22-23); (5) exposure to ammonia type chemicals used to mop the floors alleged against Sergeant Davis (Id. pg. 22); and (6) a denial of physical therapy alleged against Sergeant Davis (Id. pg. 23).

" 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) quoting Fed.R.Civ.P. 18(a).

Plaintiff's allegations regarding the March 18, 2005 incident of attempting to provoke a fight and subsequent acts alleged against Defendants Correctional Officers Reyna, Reynoso, and Morgan, Sergeants Curtiss and Padilla, Captain Wan, Lieutenants Odle, Pineda, Gallagher, MTA Hernandez, Warden Hense, Director Woodford, and Appeals Coordinator N. Grannis (Doc. 42, pp. 9-17) are related such that, when grouped in one pleading, they do not violate Rule 18(a). These are the only claims the Court will screen in this order. All of Plaintiff's other claims, against all other defendants are not related and are hereby dismissed without prejudice for failing to comply with Rule 18(a). If Plaintiff chooses to pursue his other claims, he must file separate pleadings/complaints for each unrelated claim against different defendants. Further, if Plaintiff feels that he is able to show that any of the other claims raised in his First Amended Complaint are related to the March 18, 2005 incident, such that he should be allowed to pursue them in this action, he should make every effort to show as much in a second amended complaint. However, Plaintiff is advised that if he chooses to file a second amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are

3

dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

As to the March 18, 2005 incident, Plaintiff alleges that, on that date, C/O's Renya and Reynoso and Sgt. Curtiss had Plaintiff placed in the shower while his cell was searched. (Doc. 42, pg. 8.) When Plaintiff returned, he noticed his personal belongings had hardly been touched, but that his cell-mate's possessions were ransacked. (Id. at pg. 8.) C/O Renya told Plaintiff that he was going to tell Plaintiff's "cellie" that his items were ransacked because of Plaintiff. (Id.) C/O Renya told C/O Reynoso to let him out of the section so he could get Plaintiff's "cellie" to deal with Plaintiff. (Id.) C/O Reynoso complied. (Id.) C/O Renya carried out his verbalized intent. (Id. at pg. 9.) Plaintiff's "cellie" returned and, while not yet in the cell, threatened to "kick [Plaintiff's] ass" and told Plaintiff to get out. (Id.) Plaintiff packed his property. (Id.) C/O Reynoso opened the cell door slightly and Plaintiff placed his typewriter and law books outside the cell door. (Id.) C/O Reynoso then closed the cell door from the control tower. (Id.) C/O Reynoso called Sgt. Curtiss who came to the cell and, along with C/Os Renya and Reynoso, heard Plaintiff's "cellie" continue to threaten Plaintiff. (Id.) Sgt. Curtiss told the "cellie" to enter the cell when the door was opened. (Id.) When the door opened Plaintiff's "cellie" entered the cell and Plaintiff exited the cell – despite C/O Reynoso trying to close the cell door before Plaintiff could exit. (Id.) Sgt. Curtiss told Plaintiff to get back in the cell and Plaintiff refused out of fear. (Id. at pg. 10.) Sgt. Curtiss placed one hand cuff on Plaintiff who refused to give his other arm for cuffing. (Id.) Sgt. Curtiss yanked Plaintiff backwards causing him to fall on one knee. (Id.) Sgt. Curtiss told C/O Renya to take Plaintiff down and both pounced on Plaintiff's back, knee, and neck – cuffing Plaintiff with additional assistance from C/O Morgan. (Id.) C/O Morgan placed the handcuffs on Plaintiff extremely tight and then yanked up causing extreme pain and causing the cuffs to cut into his wrists. (Id.) Plaintiff advised C/O Morgan that he needed a walker to ambulate, but Sgt. Curtiss said Plaintiff could not have his walker. (Id.) So C/O Morgan drug Plaintiff approximately 100 yards to the office holding cage – where he was left in the tight cuffs which caused his hands to swell. (Id.) Sgt. Curtiss placed Plaintiff's law books and typewriter back in the cell and allowed his "cellie" to have his way and take whatever

4

he wanted, which amounted to $130-$150 of Plaintiff's personal property.  (Id. at pg. 12.)

Later, MTA Hernandez interviewed Plaintiff, and Plaintiff asked for medical attention for his neck, back, wrists, and swollen hands.  (Id. at pg. 11.)  MTA Hernandez refused to take Plaintiff's vitals or to provide any medical attention or referral.  (Id.)

Lt. Odle fabricated a 114 lock-up order and told two C/Os to transport Plaintiff to Ad-Seg – disregarding Plaintiff's need for medical attention.  (Id.)  Capt. Wan rewrote the lock-up order contradicting Lt. Odle.  (Id.)  The next day, while still in Ad-Seg, Plaintiff had to be taken to an institutional hospital to get shots of Toradol for pain.  (Id.)  Plaintiff was then taken to another Ad-Seg unit and was placed on "Management Cell Status" where he remained for one year and was then taken to the SHU.  (Id.)  While in Ad-Seg, pending a disciplinary hearing, Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, and Lt. Odle conspired and fabricated false disciplinary charges (RVR) for the purpose of covering up their retaliation of excessive force, their staff sponsored gladiator cell fights, and their failure to protect Plaintiff.  (Id. at pg. 12.)  Sgt. Padilla reviewed the RVR and went along with the "conspiracy in the fabrication of false disciplinary charges."  (Id.)

Plaintiff claims that he was wrongfully placed in Ad-Seg and wrongfully placed on Management Cell Status pending the disciplinary hearing.  (Id. at pg. 13.)  Lt. Pineda was the disciplinary hearing officer, and he denied Plaintiff's requests both to call both Lt. Odle as a witness (for writing a lock up order contrary to Capt. Wan's) and to call an inmate who had "crucial" testimony.  (Id.)  Lt. Pineda allowed Plaintiff to telephonically call C/O Renya and C/O Reynoso as witnesses, but cut off their testimony and hung up on them as they were about to give testimony that would have favored Plaintiff.  (Id.)  Lt. Pineda also did not consider the evidence gathered by the "I.E. investigative employee."  (Id.)  Plaintiff was found guilty and had "time taken" of 150 days and was given a term of 18 months in the SHU, and "two time implemented strip cell status."  (Id.)

Plaintiff filed an inmate appeal regarding the whole scenario and was denied at all levels by Lt. Gallagher, Warden L. Hense, Chief I.A. Coordinator N. Grannis, and Director Woodford.  (Id. at pp. 13-16.)  Plaintiff also alleges that Director Woodford is liable for failing to supervise,

train, manage, control, and care for custody of inmates and the inmate appeals process. (Id.)

Plaintiff has stated some cognizable claims, and may be able to amend to correct deficiencies in his pleading so as to state additional cognizable claims. Thus, he is being given the applicable standards based on the March 18, 2005 incident and leave to file a second amended complaint.

### C. Claims for Relief

#### 1. Supervisory Liability

Defendants Sergeants Curtiss and Padilla, Captain Wan, Lieutenants Odle, Pineda, Gallagher, MTA Hernandez, Warden Hense, Director Woodford, and Appeals Coordinator N. Grannis all hold supervisory positions.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff's allegations as to personal participation in alleged constitutional deprivation(s); knowledge of violations and failure to act to prevent them; or promulgation or "implement[ation] [of] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation'" (Hansen v. Black at 646) by Sergeants Curtiss and

6

Padilla, Captain Wan, Lieutenants Odle, Pineda, Gallagher, MTA Hernandez, Warden Hense, Director Woodford, and Appeals Coordinator N. Grannis will be discussed in detail in the subsequent sections.

### a. Failure to Train

Further, Plaintiff alleges that a number of the defendants failed to properly train subordinates. In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), the Supreme Court held that, under certain circumstances, a municipality may be held liable based on the failure to train its employees. This Court finds no authority for the extension of City of Canton and its progeny to a state prison official being sued in his personal capacity. It appears to this Court, following a review of the relevant case law, that the cases involving failure to train are limited to suits against city and county entities. This is not to say that Plaintiff cannot allege facts involving the failure to train that are sufficient to state a claim under a theory of supervisory liability. However, to do so, he must state allegations so as to meet the requirements as stated in the preceding section. Hansen v. Black, 885 F.2d at 646; Taylor v. List, 880 F.2d at 1045.

### 2. Due Process

### a. Procedural

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours

between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.) "Some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added). However, the "some evidence" standard does not apply to original rules violation report where a prisoner alleges the report is

false and retaliatory. Hines v. Gomez, 108 F.3d 265, 268-69 (9th Cir. 1997).

Plaintiff did not allege facts to address all of the requirements set forth in Wolff. Plaintiff has alleged that he was not allowed to call some witnesses and that the testimony of his other witnesses was cut short, but this alone would be insufficient to support a claim of denial of procedural due process. Thus, Plaintiff fails to state a cognizable claim against Lt. Pineda for violation of his rights to procedural due process. However, Plaintiff also alleges that while he was in Ad-Seg, pending a disciplinary hearing, Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, and Lt. Odle conspired and fabricated false disciplinary charges (RVR) for the purpose of covering up their "retaliation of excessive force," their "staff sponsored gladiator cell fights," and their failure to protect Plaintiff and that Sgt. Padilla reviewed the RVR and went along with the "conspiracy in the fabrication of false disciplinary charges." (Id. at pg. 12.) Therefore, per Hines, Plaintiff has stated a cognizable claim against Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, Lt. Odle, and Sgt. Padilla for violation of his procedural due process rights.

Further, Plaintiff claims that he was wrongfully placed in Ad-Seg and wrongfully placed on Management Cell Status pending the disciplinary hearing. (Id. at pg. 13.) However, this does not state a cognizable claim as prisoners may be housed in Administrative Segregation to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification. See Hewitt v. Helms, 459 U.S. 460, 468 (1983) – overruled on other grounds.

### b. Substantive

Plaintiff alleges that Sgt. Curtiss allowed another inmate to take whatever he wanted of Plaintiff's personal property. The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state

9

employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson v. Palmer, 468 U.S. 517, 533 (1984).

"An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Plaintiff's count four under his claim(s) for relief against Sgt. Curtiss alleges that Sgt. Curtiss allowed another inmate to take approximately $130-$150 of Plaintiff's personal property – which appears to be an unauthorized act. (Doc. 42, pp. 51-52.)

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff fails to allege facts to show compliance with California's Tort Claims Act such that this claim against Sgt. Curtiss is not cognizable.

### c. Inmate Appeals

Plaintiff also grieves the processing, and reviewing of his 602 inmate appeals.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals,

Plaintiff fails, and is unable to state a cognizable claim against Director Woodford, I.A. Chief Grannis, Warden Hense, and Lt. Gallagher for the processing and/or reviewing of his 602 inmate appeals. Since this is the only claim Plaintiff raises against Lt. Gallagher, Lt. Gallagher is appropriately dismissed from this action. Further, since Plaintiff has no claims under § 1983 for the actions in reviewing and/or ruling on a prisoner's administrative appeals, Plaintiff's allegation that Director Woodford is liable for failing to supervise, train, manage, control, and care for custody of inmates and the inmate appeals process is also not cognizable.

### 3. Failure to Protect/Safety

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Helling v. McKinney, 509 U.S. 25, 31 (1993)). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer, at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health ... .'" Farmer, 511 U.S. at 843 (citing Helling, 509 U.S. at 35). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S.

at 842; <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff's allegations show that C/O Renya, C/O Reynoso, and Sgt. Curtiss engaged in acts of searching and destroying personal items of Plaintiff's "cellie" for the very purpose of prompting Plaintiff's "cellie" to cause Plaintiff harm, and knowing that harm would likely result, attempted to confine them in a cell together. (Doc. 42, pp. 8-9.) Thus, Plaintiff has stated cognizable claims against C/O Renya, C/O Reynoso, and Sgt. Curtiss for failing to provide for his protection/safety in violation of Plaintiff's rights under the Eight Amendment.

### 4. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see</u> also <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff alleges that while he was in Ad-Seg, pending a disciplinary hearing, Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, and Lt. Odle conspired and fabricated false disciplinary charges (RVR) for the purpose of covering up their "retaliation of excessive force," their "staff sponsored gladiator cell fights," and their failure to protect Plaintiff; and that Sgt. Padilla reviewed the RVR and went along with the "conspiracy in the fabrication of false disciplinary charges." (Doc. 42, at pg. 12.) These allegations fail to show both that Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, Sgt. Padilla, and Lt. Odle engaged in these acts because Plaintiff engaged in protected conduct, and that Plaintiff's exercise of his First Amendment rights were chilled. Thus, Plaintiff fails to state a cognizable claim for retaliation against Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, Sgt. Padilla, and/or Lt. Odle.

///

1      **5. Excessive Force**

Plaintiff alleges that he was subjected to excessive force in violation of the Cruel and Unusual Punishment Clause.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff alleges that Sgt. Curtiss told Plaintiff to get back in the cell and Plaintiff refused out of fear. (Id. at pg. 10.) Sgt. Curtiss placed one hand cuff on Plaintiff who refused to render his other arm for cuffing. (Id.) Sgt. Curtiss yanked Plaintiff backwards causing him to fall on

one knee. (Id.) Sgt. Curtiss told C/O Renya to take Plaintiff down and both pounced on Plaintiff's back, knee, and neck – cuffing Plaintiff with additional assistance from C/O Morgan. (Id.) C/O Morgan placed the handcuffs on Plaintiff extremely tight and then yanked up causing extreme pain and causing the cuffs to cut into his wrists. (Id.) Plaintiff advised C/O Morgan that he was disabled and needed a walker to ambulate, but Sgt. Curtiss said Plaintiff could not have his walker. (Id.) So C/O Morgan drug Plaintiff approximately 100 yards to the office holding cage – where he was left in the tight cuffs causing his hands to swell. (Id.) Plaintiff's allegations are sufficient to state a claim for use of excessive force in violation of the Cruel and Unusual Punishment Clause against Sgt. Curtiss, C/O Renya, and C/O Morgan.

### 6. Conspiracy

To state a claim for conspiracy under [section 1985(3)], a plaintiff must show (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

Plaintiff alleges that, while he was in Ad-Seg pending a disciplinary hearing, Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, and Lt. Odle conspired and fabricated false disciplinary charges (RVR) for the purpose of covering up their retaliation of excessive force, their staff sponsored gladiator cell fights, and their failure to protect Plaintiff. (Id. at pg. 12.) Plaintiff also alleges that Sgt. Padilla reviewed the RVR and went along with the "conspiracy in the fabrication of false disciplinary charges." (Id.) Plaintiff further alleges that Associate Warden Wan knew of these acts and did nothing to confront the matter. (Id. at pg. 33.) These allegations fail to state a cognizable conspiracy claim as they fail to show any racial or other class-based discriminatory

animus behind the actions of Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, and Lt. Odle. Restraint must be exercised in extended section 1985(3) beyond racial prejudice. Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (citation omitted). Without an underlying cognizable constitutional violation, Plaintiff's claim against Associate Warden Wan for failure to "confront" the matter is also not cognizable.

### 7. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that MTA Hernandez and Lt. Odle were deliberately indifferent to his serious medical needs. Plaintiff alleges that, subsequent the incident of being pounced on, cuffed, and drug some 100 yards to a holding cell, MTA Hernandez interviewed Plaintiff, and Plaintiff asked for medical attention for his neck, back, wrists, and swollen hands, but that MTA Hernandez refused to take Plaintiff's vitals or to provide any medical attention or referral. (Id. at pg. 11.) Plaintiff also alleges that, subsequent to MTA Hernandez's refusal to take his vitals or provide any medical attention or referral, Lt. Odle fabricated a 114 lock-up order and told two C/Os to transport Plaintiff to Ad-Seg – disregarding Plaintiff's need for medical attention. (Id.)

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (*quoting* Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511

U.S. at 834. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

"Denial of medical attention to prisoners constitutes an [E]ighth [A]mendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoners." Toussaint v. McCarthy 801 F.2d 1080, 1111 (9th Cir. 1986) *abrogated in part on other grounds by* Sandin v. Conner, 515 U.S. 472 (1995) (citing Estelle, 429 U.S. at 104-05); see also Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) McGuckin 974 F.2d at 1059. Delay of, or interference with, medical treatment can also amount to deliberate indifference. See Jett, 439 F.3d at 1096; Clement, 298 F.3d at 905; Hallett, 296 F.3d at 744; Lopez, 203 F.3d at 1131; Jackson, 90 F.3d at 332; McGuckin 974 F.2d at 1059; Hutchinson v. Untied States 838 F.2d 390, 394 (9th Cir. 1988). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the prisoner must show that the delay led to further injury. See Hallett, 296 F.3d at 745-46; McGuckin 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*). Mere delay of surgery, which did not cause harm, is insufficient to state a claim of deliberate medical indifference, and Plaintiff will "have no claim for deliberate medical indifference unless the denial was harmful." Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*) citing Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Plaintiff's allegations are not cognizable as he fails to state specific allegations to show that he had a serious medical need which these two defendants were aware of, but deliberately disregarded, and whether any further injury was caused the delay of medical treatment.

### 8. "Time Taken"

Plaintiff alleges that, subsequent to the disciplinary hearing, he was found guilty and had 150 days of "time taken." (Id. at pg. 13.)

Generally, a habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases. A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a). However, a deprivation that affects the duration of a prisoner's sentence, such a the loss of good time credits may, in some circumstances, implicate due process concerns. Sandin v. Conner, 515 U.S. 472, 477 (1995) (citing with approval Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state-created interest in shortened prison sentence is an interest of "real substance")). Such a liberty interest is limited to circumstances in which time credits were revoked as a disciplinary action; however, such a claim is not cognizable under § 1983 unless the result of such disciplinary action has been previously overturned or otherwise invalidated. Edwards v. Balisok, 520 U.S. 641, 645-46 (1997). Moreover, the act of revoking time credits must be distinguished from the act of limiting a prisoner's ability to prospectively earn time credits. Prisoners have no liberty interest in earning work time credits or participating in work programs. Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986).

Plaintiff does not state sufficient factual allegations regarding the 150 days of "time taken" that he seeks to have restored for the Court to ascertain whether he might have a right to proceed in an action under § 1983, or if he should be restricted to filing a habeas corpus petition. Further, Plaintiff fails to state any allegations to show that the disciplinary action of which he complains has been overturned or otherwise invalidated. Thus, Plaintiff's claim regarding the 150 days of "time taken" is not cognizable.

### II. CONCLUSION

For the reasons set forth above, Plaintiff's First Amended Complaint is dismissed, with leave to file a second amended complaint within thirty days. If Plaintiff needs an extension of

time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's second amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's First Amended Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File a second amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file a second amended complaint and wishes to proceed only on the claims identified by the Court as viable/cognizable in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

**Dated:**   **April 30, 2009**                  /s/  **William M. Wunderlich**
                                        UNITED STATES MAGISTRATE JUDGE