# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD DEMERSON,<br><br>         Plaintiff,<br><br>    v.<br><br>SATF WARDEN, et al.,<br><br>         Defendants. | CASE NO. 1:06-cv-00250-LJO-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS THAT CERTAIN CLAIMS AND DEFENDANTS BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED<br><br>OBJECTIONS DUE IN THIRTY DAYS<br><br>(Doc. 56) |

**I.    Screening Requirement**

Plaintiff Edward Demerson is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's June 2, 2009, Second Amended Complaint filed in response to an earlier order dismissing the first amended complaint and granting Plaintiff leave amend.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct, Iqbal at 1950, and while factual allegations are accepted as true, legal conclusion are not, id. at 1949.

**II.     Factual Summary**

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Salinas Valley State Prison, brings this civil rights action against defendant correctional officials employed by the CDCR at the California Substance Abuse Treatment Facility at Corcoran. Plaintiff names the following defendants: Jeanne Woodford, Director of the California Department of Corrections and Rehabilitation (CDCR); N. Grannis, Chief of Inmate Appeals; Warden Derral Adams; Warden Kent Clark; Chief Deputy Warden L. Hense; Captain Diaz; Lieutenant A. Pineda; Lt. Wan; Lt. B. Odle; Sergeant Davis; Sgt. Munoz; Sgt. Padilla; Sgt. Curtiss; Correctional Officer Reynoso; C/O Renya; C/O Morgan; Medical Technical Assistant Hernandez.

Plaintiff sets forth multiple claims arising from three main but unrelated events: (1) an incident on March 8, 2005; (2) placement in a strip cell on May 31, 2005; and (3) placement in a strip cell October 19, 2005. Plaintiff's second amended complaint is virtually identical to his first amended complaint, although Plaintiff added a few new allegations and included notations in the margins. Plaintiff's claims arising from the incidents beginning on May 31, 2005, and October 19, 2005, are unrelated to the claims arising from the incident beginning on March 8, 2005, and are not appropriately litigated in this action. Fed. R. Civ. P. 18(a); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff was previously notified of this issue but again included the unrelated claims in

1  his second amended complaint. The Court therefore recommends dismissal of the claims arising out
2  of Plaintiff's placement in strip cells on May 31, 2005, and October 19, 2005. The Court will
3  address on the merits only those properly related claims arising from the incident that began on
4  March 8, 2005. Plaintiff's allegations relating to those claims are summarized as follows.

5       On March 8, 2005, Correctional Officers Renya and Reynoso, and Sgt. Curtiss had Plaintiff
6  placed in the shower while his cell was searched. When Plaintiff returned, he noticed that his
7  personal belongings had hardly been touched, but his cellmate's belongings had been ransacked and
8  piled on the floor. C/O Renya told Plaintiff that he was going to tell Plaintiff's cellmate that his
9  items had been ransacked because of Plaintiff. C/O Renya told C/O Reynoso to let him out of the
10 section so he could get Plaintiff's "cellie" to deal with Plaintiff.

11      C/O Renya followed through with his threat. Plaintiff's cellmate returned, and before he
12 entered the cell, threatened to "kick [Plaintiff's] ass" and told Plaintiff to get out. (Am. Compl.
13 10:22.) Plaintiff packed his property. C/O Reynoso opened the cell door slightly and Plaintiff
14 placed his typewriter and law books outside of the cell door. C/O Reynoso then closed the cell door
15 from the control tower. C/O Reynoso called Sgt. Curtiss, who came to the cell and, along with C/Os
16 Renya and Reynoso, heard Plaintiff's "cellie" continue to threaten Plaintiff. Sgt. Curtiss told the
17 "cellie" to enter the cell when the door was opened. When the door opened Plaintiff's "cellie"
18 entered the cell and Plaintiff exited the cell, despite C/O Reynoso's attempt to close the cell door
19 before Plaintiff could exit. Sgt. Curtiss told Plaintiff to get back in his cell and Plaintiff refused out
20 of fear.

21      Sgt. Curtiss placed one hand on Plaintiff, who refused to give his other arm for cuffing. Sgt.
22 Curtiss yanked Plaintiff backwards, causing him to fall on one knee. Sgt. Curtiss told C/O Renya
23 to take Plaintiff down. Both Curtiss and Renya pounced on Plaintiff's back, knee and neck. Plaintiff
24 was secured in handcuffs with additional assistance from C/O Morgan. C/O Morgan placed the
25 handcuffs on Plaintiff extremely tightly and then yanked up, causing extreme pain and causing the
26 cuffs to cut into his wrists. Plaintiff advised C/O Morgan that he needed a walker to ambulate, but
27 Sgt. Curtiss said Plaintiff could not have his walker. C/O Morgan dragged Plaintiff approximately
28 100 yards to the office holding cage, where he was left in the tightened cuffs. As a result, his hands

swelled. Sgt. Curtiss placed Plaintiff's law books and typewriter back in the cell and allowed Plaintiff's "cellie" to take whatever he wanted, which amounted to $130.00 - $150.00 of Plaintiff's personal property. At some point, MTA Hernandez interviewed Plaintiff. Plaintiff requested medical attention for his back, neck, wrists and swollen hands. MTA Hernandez refused to take Plaintiff's vital signs or to provide any medical attention or a referral.

Lt. Odle fabricated a lock-up order and told two C/Os to transport Plaintiff to Administrative Segregation (AdSeg), disregarding Plaintiff's need for medical attention. The next day, while still in AdSeg, Plaintiff was taken to an institutional hospital to get shots of Toradol for pain. Plaintiff was then taken to another AdSeg unit and placed on "Management Cell Status" where he remained for one year before being taken to the Security Housing Unit (SHU). While Plaintiff was in AdSeg pending a disciplinary hearing, Defendants Curtiss, Renya, Reynoso, Morgan and Odle conspired and fabricated false disciplinary charges (Rules Violation Report, or RVR) for the purpose of covering up their use of excessive force, their staff sponsored gladiator fights and their failure to protect Plaintiff. Sgt. Padilla reviewed the RVR and went along with the "conspiracy in the fabrication of false disciplinary charges." (Am. Compl. 13:20.) Plaintiff claims that he was wrongfully placed in AdSeg and wrongfully placed on Management Cell Status pending the disciplinary hearing.

During the disciplinary hearing, Lt. Pineda, the hearing officer, denied Plaintiff's requests to call Lt. Odle as a witness and to call an inmate who had "crucial" testimony. (Am. Compl. 14:6.) Lt. Pineda allowed Plaintiff to telephonically call C/Os Renya and Reynoso as witnesses, but cut off their testimony and hung up on them as they were about to give testimony that would have favored Plaintiff. Lt. Pineda also failed to consider the evidence gathered by the investigative employee assigned to the case. Plaintiff was found guilty and had "time taken" of 150 days and was given an 18 month SHU term. (Am. Compl. 14:21.)

Plaintiff filed an inmate appeal "regarding the whole scenario," which was denied at all levels by Lt. Gallagher, Warden Hense, Inmate Appeals Coordinator Grannis and Director Woodford. Plaintiff also alleges that Defendant Woodford is liable for failure to supervise, train and manage the control and care for custody of inmates and the inmate appeals process. (Am. Compl. 16:28.)

4

Plaintiff includes the following additions in the second amended complaint: Plaintiff adds a page 17A to the second amended complaint. This page sets forth allegations in support of Plaintiff's due process claim. Plaintiff alleges generally that Defendant Woodford was deliberately indifferent to Plaintiff's due process rights by failing to "supervise, manage and enforce establish procedures, regulations and promulgated laws." (Am. Compl. P. 17A.) Plaintiff levels the conclusory allegation that Woodford failed to

> regulate and supervise threw to N. Grannis Chief Inmate Appeals Coordinator and thereby is cause in fact and proximate cause of damages cited and alleged threw out this claim and imposing atypical significant hardship upon Inmate Demerson, deprivation of property, due process violation, on strip cell status, management cell status, wrongful SHU term, 602 trashed, mail trashed, unfair hearing denied witnesses, evidence and hereby reiterate and allege, Plaintiff 03/08/05 statement of facts and Inmate 5/31/05 statement of facts, each and every other allegation, deprived by violation of Due Process hereby incorporated.

### III. Claims

#### A. Excessive Force

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." Farmer v. Brennan, 511 U.S. 825 (1994); Hoptowit v. Ray, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); see also Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." Gordon v. Faber, 800 F.Supp. 797, 800 (N.D.Iowa 1992) (citation omitted), *aff'd,* 973 F.2d 686 (8th Cir.1992). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834, 114 S.Ct. at 1977 (quoting Rhodes, 452 U.S. at 347).

Factors such as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to the ultimate determination as to whether force used by prison personnel was excessive. From these factors,

inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. "Equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Whitley v. Albers 475 U.S. 312, 321 (1986).

Plaintiff has alleged facts suggesting that Sgt. Curtiss, C/O Renya and C/O Morgan subjected him to excessive force in violation of the Eighth Amendment. Plaintiff has alleged facts indicating that though he offered no resistance, Sgt. Curtiss "yanked Plaintiff backwards, causing him to fall on one knee." (Am. Compl. 11:12.) Plaintiff has informed Sgt. Curtiss that he is "handicapped, mobility impaired with the use of a walker that I need out of the cell and that I'm pending surgery on both knees." (Am. Compl. 12:4-6.) Plaintiff alleges that both Sgt. Curtiss and C/O Renya pounced on his back, knee and neck. Once Plaintiff was placed in handcuffs, C/O Morgan yanked the handcuffs up, causing the handcuffs to cut into Plaintiff's wrist, resulting in extreme pain. Morgan also dragged Plaintiff 100 yards to a holding cage, where he was left in the tightened cuffs. Taking the facts of the second amended complaint as true, Plaintiff has stated a claim against Sgt. Curtiss, C/O Renya and C/O Morgan for excessive force in violation of the Eighth Amendment.

**B.     Failure to Protect**

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hoptowit v. Ray, 682 F.2d at 1250-51; Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer v. Brennan, 511 U.S. at 834. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. at 834(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

To demonstrate that a prison official was deliberately indifferent to a serious threat to an inmate's safety, the prisoner must show that "the official knew of and disregarded an excessive risk

6

to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must draw the inference." Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

Here, Plaintiff alleges facts indicating that Sgt. Curtiss, C/O Renya and C/O Reynoso were aware of the risk of harm to Plaintiff. Plaintiff alleges that C/O Renya told Plaintiff that he was going to tell Plaintiff's cellmate that his items had been ransacked because of Plaintiff. C/O Renya told C/O Reynoso to let Plaintiff out of the section to he could get Plaintiff's "cellie" to deal with Plaintiff. C/O Reynoso called Sgt. Curtiss, who came to the cell, and along with C/Os Renya and Reynoso, heard Plaintiff's cellmate continue to threaten Plaintiff. Sgt. Curtiss told Plaintiff's cellmate to enter cell when the door was opened. Plaintiff has therefore alleged facts suggesting that Sgt. Curtiss, C/O Renya and C/O Reynoso were both aware of the specific danger to Plaintiff and disregarded that risk. The facts here resemble the facts in Hearns v. Terhune, 413 F.3d 1036 (9th Cir. 2005), where the court held that the plaintiff stated an Eighth Amendment claim for relief on his failure to protect claim, noting that "the prison officials created the risk and then facilitated the attacks" on the plaintiff. Id. at 1041. Plaintiff has therefore stated a claim for relief against Sgt. Curtiss, C/O Renya and C/O Reynoso for failure to protect Plaintiff in violation of the Eighth Amendment.

### C. Medical Care

Where a prisoner's Eighth Amendment claim is one for inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer v.

Brennan, 511 U.S. 828, 834 (1994). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837.) "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002).

Plaintiff alleges that MTA Hernandez and Lt. Odle were deliberately indifferent to his serious medical needs. Plaintiff alleges that, subsequent to the excessive force incident, MTA Hernandez interviewed Plaintiff. Plaintiff alleges that he sought medical attention for his back, neck, wrists and swollen hands, but MTA Hernandez refused to take Plaintiff's vital signs or provide any medical attention or referral for medical treatment. As to Lt. Odle, Plaintiff alleges that after he was interviewed by Hernandez, Lt. Odle fabricated a lock-up order and told two Correctional Officers to transport Plaintiff to AdSeg, disregarding Plaintiff's request for medical attention.

Plaintiff was previously advised that his allegations are not cognizable as he fails to state specific allegations to show that he had a serious medical need which these two defendants were aware of, but deliberately disregarded, and whether any further injury was caused by the delay of medical treatment." Plaintiff adds no new allegations in the second amended complaint. This claim should therefore be dismissed.

**D.     Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff alleges that while he was in AdSeg pending a disciplinary hearing, Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan and Lt. Odle conspired and fabricated false disciplinary charges for the purpose of covering up their "retaliation of excessive force," their "staff sponsored gladiator cell fights," and their failure to protect Plaintiff. (Am. Compl. 12:5-7.) As with his conspiracy claim, he alleges that Sgt. Padilla, in reviewing the violation, "went along with the conspiracy in the fabrication of false disciplinary charges." (Am. Compl. 12:20.) Plaintiff fails to show that Sgt. Curtiss, C/O Renya, C/O Reynoso, C/O Morgan, Sgt. Padilla, or Lt. Odle engaged in those acts because of Plaintiff's engagement in protected conduct. This claim should therefore be dismissed.

### E. Due Process

#### 1. Property Deprivation

Plaintiff alleges that Sgt. Curtiss allowed another inmate to take whatever he wanted of Plaintiff's personal property. The Due Process Clause protects prisoners from being deprived of property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners do have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). While an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532 n. 13 (1984)(citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). The allegation that Sgt. Curtiss allowed another inmate to take approximately $130-$150 of Plaintiff's personal property fails to state a claim under section n1983 because it was an unauthorized deprivation.

9

### 2. Disciplinary Process

Plaintiff alleges that he was wrongfully placed in AdSeg and on Management Cell Status based on false charges, and that he was wrongfully found guilty of the disciplinary charges against him at his disciplinary hearing. Plaintiff lost time credits as a result of his disciplinary process.

#### a. AdSeg/Management Cell Status

In order to be entitled under federal law to any procedural due process protections, Plaintiff must first have a liberty interest at stake. Plaintiff has alleged no facts that establish the existence of a liberty interest in remaining free from AdSeg. Id.; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted). Because Plaintiff has not established the existence of a liberty interest in remaining free from AdSeg, plaintiff may not pursue a claim for relief under section 1983 for deprivation of procedural due process.

Plaintiff also alleges that he was placed on Management Cell status for a year. As noted, courts look first to whether the inmate has demonstrated the deprivation of a protected liberty interest before inquiring into whether the procedural protections required under federal law were provided. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 545 U.S. 209, 222 (2005); Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Plaintiff fails to allege any facts suggesting that the conditions in AdSeg or management cell status constituted conditions that were atypical and significant in relation to the ordinary incidents of prison life. This claim should therefore be

dismissed.

### b.    Disciplinary Hearing

Plaintiff alleges that he was deprived of a fair and impartial hearing. Plaintiff alleges that he was not allowed to call some witnesses and the testimony of his other witnesses was cut short, and that he was wrongfully placed in AdSeg and wrongfully placed on management cell status based on false charges. Plaintiff lost time credits as a result.

Plaintiff is challenging the events relating to the disciplinary charge against him and the disciplinary hearing at which he was assessed a time credit forfeiture. "[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v.Dotson, 544 U.S. 74, 81-2 (2005); Muhammad v. Close, 540 U.S. 641, 648 (1997). Because the guilty finding affects the length of Plaintiff's sentence, his claim is barred under section 1983 until such time as he invalidates the result of the disciplinary hearing via the prison's administrative remedy process or a petition for writ of habeas corpus. Id. Plaintiff does not allege any facts that indicate his conviction was actually reversed, expunged or otherwise invalidated. Plaintiff's claim is therefore barred.

### c.    Inmate Appeals Process

Plaintiff does not have "a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Mann v. Adams, 855 F.2d 639, 40 (9th Cir. 1988). Plaintiff was previously informed that actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N. D. Ill. 1982); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)(no liberty interest in processing of appeals because no entitlement to a specific grievance procedure). Plaintiff adds no new the allegations in his second amended complaint. Because Plaintiff has no protected interest in an inmate grievance procedure, Plaintiff's claims based on the processing or handling of his appeals must be dismissed.

**F.     Conspiracy**

This claim is based on Plaintiff's allegations that Defendants Curtiss, Reynoso, Renya, Morgan and Odle conspired and fabricated false disciplinary charges for the purpose of covering up their use of excessive force. Plaintiff also alleged that Sgt. Padilla "went along" with the conspiracy and that Lt. Wan knew of these acts and did nothing to "confront" the matter. (Am. Compl. 13:4-7, 18-28.)  Plaintiff alleges a claim for relief pursuant to 42 U.S.C. § 1985. The second clause of section 1985(2) proscribes conspiracies for the purpose of impeding the due course of justice in any state, with the intent to deny equal protection of the laws, and section 1985(3) proscribes conspiracies to deny equal protection of the law or equal privileges and immunities.[1] Coverdell v. Dep't. of Soc. and  Health Svcs., State of Washington, 834 F.2d 758, 767 (9th Cir. 1987). An allegation of racial or class-based discrimination is required to state a claim for relief under either the second clause of section 1985(2) or section 1985(3). Bretz v. Kelman, 773 F.2d 1026, 1028-1030 (9th Cir. 1985). Plaintiff sets forth no allegations giving rise to a facially plausible claim for relief under section 1985. Iqbal, 129 S.Ct. at 1949. Conclusory allegations of conspiracy do not suffice. Id.

To the extent Plaintiff is attempting to allege a conspiracy claim pursuant to section 1986, that claim also fails because a section 1986 claim is dependent upon the existence of a viable 1985 claim.  McCalden v. California Library Assoc., 955 F.2d 1214, 1223 (9th Cir. 1992).   Further, Plaintiff does not allege facts sufficient to state a claim for conspiracy under section 1983. Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). The Court therefore recommends dismissal of Plaintiff's conspiracy claims, with prejudice.

**G.     Supervisory Liability**

Under section 1983, Plaintiff must prove that the Defendants holding supervisory positions personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his or her

---

[1] "The first clause of 1985(2) concerns conspiracy to obstruct justice in the federal courts, or to intimidate a party, witness or juror in connection therewith," and is not applicable. Bretz v. Kelman, 773 F.2d 1026, 1028 n. 3 (9th Cir. 1985).

own misconduct. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009). A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); also Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff names as defendants the following supervisory officials: Jeanne Woodford, Director of the California Department of Corrections and Rehabilitation (CDCR); N. Grannis, Chief of Inmate Appeals; Warden Derral Adams; Warden Kent Clark; Chief Deputy Warden L. Hense. Plaintiff has not alleged any facts indicating that any of the supervisory defendants personally participated in incident of excessive force or failure to protect that is at issue in this lawsuit. Plaintiff as not alleged any facts that support a conclusory allegation that the supervisory defendants knew of and failed to act to prevent the misconduct at issue. The supervisory defendants should therefore be dismissed.

**IV.     Amendment**

On April 19, 2010, Plaintiff filed a document titled as "Notice of Intention to File Third Amended Claim." In this document, Plaintiff indicates his intention to file a third amended complaint. On May 10, 2010, Plaintiff filed a document titled as "Notice of Completed third amended claim." In this document, Plaintiff indicates that he is on lockdown, and intends to file a third amended complaint within two weeks. On June 7, 2010, Plaintiff filed a status report, again indicating his intention to file a third amended complaint.

Plaintiff initiated this action by filing a civil complaint. Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff may amend his complaint once, as a matter of course, so long as a responsive pleading has not been filed. Plaintiff exercised this option by filing the first amended complaint before the Court screened the original complaint. Plaintiff has not been granted leave to file a third amended complaint. Further, the order addressing the deficiencies in the first amended complaint provided Plaintiff with a detailed explanation of the deficiencies. Plaintiff was provided with the appropriate legal authority, and clearly advised that certain of his claims failed because

Plaintiff had failed to allege sufficient facts. Plaintiff's claims did not fail for want of legal analysis. The Court advised Plaintiff of the deficiencies, and provided Plaintiff with an opportunity to correct them. Plaintiff exercised his option to file a second amended complaint. As noted in this order, Plaintiff has not cured the defects identified in the first amended complaint. The Court is not inclined to prolong this action by allowing Plaintiff to file a third amended complaint addressing the claims that the Court recommends dismissal of in this order. Once Defendants file an answer in this case, a scheduling order will be entered, setting a date for the filing of a motion to amend the complaint regarding the claims on which this action proceeds. Plaintiff may not, nor under the future scheduling order, file a third amended complaint without leave of Court.

## V.     **Conclusion and Recommendation**

The second amended complaint states a claim for relief against the following defendants: Sgt. Curtiss, C/O Renya and C/O Morgan on Plaintiff's excessive force claim; Sgt. Curtiss, C/O Renya and C/O Reynoso on Plaintiff's failure to protect claim. Plaintiff fails to state any claims against Defendants Woodford, Grannis, Adams, Clark, Hense, Diaz, Wan, Pineda, Davis, Odle, Padilla and Hernandez. Plaintiff also fails to state any due process, conspiracy, retaliation or medical care claims. These claims and defendants should therefore be dismissed without leave to amend for Plaintiff's failure to state a claim against them. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment). See also Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)(dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. This action proceed on the second amended complaint against the following defendants: Sgt. Curtiss, C/O Renya and C/O Morgan on Plaintiff's excessive force claim; Sgt. Curtiss, C/O Renya and C/O Reynoso on Plaintiff's failure to protect claim.

2. Defendants J. Woodford, D. Adams, K. Clark, L. Hense, Captain Diaz, Lieutenant Pineda, Lieutenant. Odle, Sergeant Davis, Sergeant. Munoz, Sgt. Padilla and Medical Technical Assistant Hernandez be dismissed.

3. Plaintiff's due process, conspiracy, retaliation and medical care claims be dismissed for failure to state a claim upon which relief could be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 31, 2010**              /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE